UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

S.E.,

               Petitioner,

    v.

KRISTI NOEM, et al.,

               Respondents.

No.  1:26-cv-00356-DAD-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.     Factual and Procedural History**

Petitioner is a native and citizen of Turkey who entered the United States on or about January 3, 2024.  (Doc. No. 9-1 at ¶ 6.)  Immigration authorities initially detained petitioner before releasing him on an order of recognizance on January 4, 2024.  (Doc. No. 9-2 at 2–3.)  A Notice to Appear for removal proceedings charged petitioner with being removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  (Doc. No. 9-3 at 1.)  On March 21, 2025, petitioner was arrested for a violation of California Penal Code § 243(d), battery causing serious bodily injury.  (Doc. No. 9-4 at 6.)  On May 7, 2025, petitioner received a letter from the South San Francisco Police

1

Department informing him that the San Mateo County District Attorney's Office had reviewed the case and declined prosecution and that, therefore, their investigation had been concluded. (Doc. No. 10-1 at 2.) On December 5, 2025, petitioner reported to the Immigration and Customs Enforcement ("ICE") office in San Francisco as scheduled and was detained by ICE officers for violating the terms of his order of release. (Doc. No. 9-2 at 4.)

On January 27, 2026, the District Judge assigned to this case granted petitioner's motion for a preliminary injunction in part. (ECF No. 11.) The preliminary injunction required respondents to "provide petitioner with a bond hearing before an immigration judge where respondents shall bear the burden of establishing that petitioner presents a danger to the community or flight risk if released thereby justifying his continued detention." (ECF No. 11 at 6.)

Following this order, the parties filed a status report indicating that an IJ convened petitioner's bond hearing on February 3, 2026 and denied bond by finding him to be a flight risk. (ECF No. 12; ECF No. 12-1 (denial order based on "no family ties in the United States[,] sponsor is a friend[,] respondent is a recent arrival-2024[,] speculative."))

Petitioner filed a motion to enforce the preliminary injunction on February 7, 2026 because the "government provided no evidence of present flight risk, and the immigration judge misplaced the evidentiary burden, failed to hold the government to its heavy burden of proof, and failed to demonstrate impartiality." (ECF No. 13 at 2.) Based on all these reasons, petitioner submits that his ongoing detention violates the preliminary injunction and that he should be released from immigration custody. First, petitioner clarifies that he had resided in the United States for almost two years before he was redetained by ICE (January 2024 to December 2025). (ECF No. 13 at 3.) During this time, petitioner "filed an application for asylum, appeared to a fingerprint appointment (Doc 1-5), obtained a work permit valid for five years (Doc 1-4), and appeared to ICE check-ins, indeed appearing voluntarily to the ICE check-in at which he was re-detained." (Id.) Petitioner emphasizes that "[n]othing in the record that reportedly led to his re-detention indicates any new information regarding flight risk, such as failures to appear, or missed appointments." (Id.) The only evidence in the record included letters of support from

2

lawful permanent residents or U.S. citizens who have known petitioner for up to 25 years and described him as a hard worker, kind, calm, and responsible individual.  (ECF No. 13-2 at 33-41.)  Petitioner also submitted a letter from his U.S. citizen sponsor who committed to provide transportation to and from all future immigration court dates and check-ins.  (ECF No. 13-2 at 41.)  Also included in the record is petitioner's tax return transcript demonstrating that he had substantial gainful employment while living in the U.S. for which he paid taxes.  (ECF No. 13-2 at 43-62.)  By rendering a decision that was not based on any evidence in the record, petitioner contends that the IJ was not acting as a "neutral arbiter" and that the decision was arbitrary and capricious.  (ECF No. 13 at 4.)  The determination made by the IJ that petitioner was a flight risk was not based on any change in circumstance from ICE's January 2024 decision to release petitioner on his own recognizance.  "He had not been in the U.S. even one day when he was released by Respondents, compared to the almost 2 years that he had been present as of his redetention.  He didn't have an asylum application on file and work permit valid for 5 years when he was released by Respondents at the border."  (ECF No. 13 at 5.)  Moreover, the IJ shifted the burden of proof to petitioner by requiring him to demonstrate that he has family ties in the U.S.  (ECF No. 13 at 5.)

In their opposition to the motion, respondents indicate that they complied with the preliminary injunction because a bond hearing was held before an IJ who "affirmed that the standard the government had to meet was to prove danger or flight risk by clear and convincing evidence."  (ECF No. 16 at 2.)  Even if the Court finds that the IJ abused his discretion, "the only proper remedy would be to direct a second bond hearing[.]"  (ECF No. 16 at 3.)  In addition, respondents submitted a copy of the transcript of petitioner's bond hearing.  (ECF No. 16-1.)

In reply, petitioner points out the irony that "[t]his case was never about flight risk.  The purported reason that Respondents gave for redetaining Petitioner was because of an arrest that led to no charges.  The arrest also provided the impetus for the Court's decision to order a bond hearing."  (ECF No. 17 at 2.)  After determining that petitioner was not a danger to the community, the bond hearing "went off the rails, and the IJ found Petitioner to be a 'flight risk' without providing the procedural safeguards required of a constitutionally mandated proceeding."

3

(ECF No. 17 at 2.)  Although petitioner concedes that the IJ stated the correct evidentiary standard on the record during the bond hearing, this only amounted to "lip service" according to petitioner.  (ECF No. 17 at 3.)

Petitioner also submitted a copy of the IJ's oral bond decision, which demonstrates that the IJ did not consider the I-213 which the Government submitted and, as a result, did not find that petitioner was a danger to the community.  (ECF No. 17-2 at 2.)  Instead, the IJ concluded that petitioner was a flight risk because he was a "recent arrival to the United States …[,] has no blood relatives in this country," and his asylum claim "is speculative[.]"  (ECF No. 17-2 at 3.)

As explained below, the court finds respondents did violate the preliminary injunction when the IJ failed to meaningfully apply the clear and convincing standard and committed other legal error integral to the proper implementation of that standard.

## II.    Legal Standards

A district court has continuing jurisdiction to enforce its injunction.  See Crawford v. Honig, 37 F.3d 485, 488 (9th Cir. 1994).  The party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a specific provision of the court's order.  Kia America, Inc. v. Rally Auto Group, Inc., Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 at *2 (C.D. Cal. Oct. 20, 2022) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)).  The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed in order to provide sufficient notice to the party being enjoined.  Clark v. Coye, 60 F.3d 600, 604 (9th Cir. 1995).  "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction."  United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985).

The standard of review must also account for the fact that what is being reviewed here is an IJ's determination of flight risk.  In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard.  Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard."  Id. (citation and quotations omitted).  In other words, "[i]n

4

reviewing the IJ's determination, a district court['s] ... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)).  The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez, 872 F.3d 976, 981 (9th Cir. 2017).  Moreover, a habeas court reviews pure questions of law de novo.  See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

Incorporating the two standard of review doctrines discussed above, the Court next determines whether petitioner has shown clearly and convincingly that the IJ abused his discretion in determining that petitioner is a flight risk by clear and convincing evidence.  The Court will also determine whether petitioner has shown clearly and convincingly that the IJ engaged in pure legal error prohibited by the preliminary injunction.

**III.    Analysis**

According to the Board of Immigration Appeals, a noncitizen's flight risk may be evaluated based on a number of factors including (1) whether the individual has a fixed address in the United States; (2) length of residence in the United States; (3) the individual's family ties in the United States, "and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen''s record of appearance in court; (6) the [noncitizen]'s criminal record…; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from the authorities; [and] (9) the [noncitizen]'s manner of entry to the Unites States."  See Matter of Guerra, 24 I&N Dec. 37, *3 (BIA 2006), abrogated on other grounds by Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).  With this framework in mind, the Court now turns to review the IJ's bond decision in petitioner's case.

The undersigned finds that petitioner has sufficiently demonstrated that the IJ abused his discretion in finding petitioner to be a flight risk by clear and convincing evidence.  To constitute clear and convincing evidence, the evidence must establish "an abiding conviction that the truth

of [the] factual contentions at issue is highly probable." Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc).  In another formulation, the "material" offered must "instantly tilt the evidentiary scales in the affirmative when weighted against the evidence … offered in opposition." Colorado v. New Mexico, 467 U.S. 310, 316 (1984).  The IJ did not cite any new evidence showing a risk of flight because the government did not submit any evidence related to this factor.  See Sales v. Johnson, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. April 27, 2017) (granting habeas petition where the IJ's flight risk finding was not supported by clear and convincing evidence when the government did not present any evidence or even argue the flight risk factor).  The whole of ICE's argument as to flight was that petitioner "has only been in the country since January of 2024, and he's been in custody for two months, so more, more than a year-and-a-half – less than 2 years." ECF No. 16-1 at 16 (Tr. of Bond Hearing.)  But he had only been in the country one day when immigration authorities released him in 2024.  Moreover, the only new evidence relevant to a risk of flight showed that petitioner was pursuing relief against removal through the filing of a timely application for asylum and complying with supervision by ICE, including by reporting to ICE on the day he was arrested.  The absence of any change in circumstances relative to the immigration authorities' prior determination in January 2024 that petitioner was not a flight risk demonstrates an abuse of discretion in implementing the clear and convincing evidence standard.  Id.; see also Doung v. Kaiser, 800 F.Supp.3d 1030, 1042, 2025 WL 2689266, at *9 (N.D. Cal. Sept. 19, 2025) (quoting Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981) (explaining that "[w]here an individualized assessment of flight risk and dangerousness has been made and bond granted, courts follow the Board of Immigration Appeals in requiring a 'material change of circumstances' before bond can be revoked or modified")).  As a result, the IJ committed legal error as there was not just insufficient current evidence of flight risk, but no evidence whatsoever.  See Garcia v. Hyde, ___ F.Supp.3d ____, 2025 WL 3466312 (D. R.I. Dec. 3, 2025) (concluding that the IJ's denial of bond constituted an "error of law" in violation of the noncitizen's right to due process that justified releasing him).

While the IJ stated DHS had the burden to prove "by clear and convincing evidence" petitioner "was a flight risk or a danger or perhaps both," ECF No. 17-1 at 2 (IJ Oral Decision),

the IJ's "reasoning and decision" shows that invocation paid mere "lip service" to that heightened standard. Nat'l Res. Def. Council, Inc. v. Pritzker, 828 F.3d 1125, 1135 (9th Cir. 2016). First, despite noting at length the viability of petitioner's sexual orientation-based asylum claim, the IJ reasoned, "[a]ll relief is speculative until it isn't[.]" ECF No. 16-1 at 23. Similarly, the IJ reasoned, "I routinely find people that have been in the U.S. a short duration seeking fear-based relief with no family here and no better ties than that to be a flight risk." Id. But those statements reflect blanket characterizations about circumstances common to many individuals in immigration proceedings, not individualized determinations as are necessary when applying a heightened evidentiary burden in a detention case. Moreover, what an IJ "routinely" does in bond proceedings—where generally the burden is on the noncitizen to show that they are not a risk of flight, see Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006)—is insufficient to establish the outcome when the burden is on DHS. The IJ also reasoned, "On balance between all relief being more speculative than not in the fear-based realm until I've heard the case, it's hard to say he's not a flight risk." ECF No. 16-1 at 23. But the Court's preliminary injunction order did not leave room for evaluating the evidence "[o]n balance" or determining whether one could "say" petitioner is "not a flight risk." It required the IJ to hold DHS to the burden of demonstrating risk of flight by clear and convincing evidence. The record shows the IJ did not do that.[1]

Finally, the IJ failed to meaningfully discuss the probative evidence petitioner submitted demonstrating his significant ties to the community. See Cole v. Holder, 659 F.3d 762, 771 (9th Cir. 2011) (explaining that if "the agency did not consider all the evidence before it, a catchall phrase does not suffice, and the decision cannot stand."). The IJ's passing reference to a single letter of support from petitioner's sponsor, in light of the several letters of support submitted, ECF

---

[1] The undersigned is conscious of the immense workload this and other IJs face. At the outset of the calendar on which petitioner's bond hearing was heard, the IJ explained the numerous adverse conditions in which each one of the cases would be heard that day. These include the absence of an actual courtroom because the California City Detention Facility is located in the Mojave Desert, technical glitches related to the use of Webex virtual meeting software described as "a moment of computer confusion," the lack of interpreters for "all kinds of different languages," a "massive bond docket," and a caseload of "about 950 people." ECF No. 16-1 at 2-4. Indeed, a Turkish interpreter was not available in petitioner's case and, as a result, his counsel was unable to ask him to provide information about his employment plans and his sponsors when the IJ asked questions on those topics. Id. at 21-22.

No. 13-2 at 33-41, is insufficient to show that the IJ meaningfully considered petitioner's evidence in determining whether DHS had carried its burden of demonstrating flight risk.  See Y.S.G. v. Andrews, No. 2:25-cv-1884-SCR, 2025 WL 2979309 (E.D. Cal. Oct. 22, 2025) (finding that the IJ abused her discretion in finding noncitizen to be a flight risk and a danger to the community by clear and convincing evidence in part because, "[t]he IJ's passing reference to that evidence is insufficient to show that the IJ meaningfully considered it in determining whether DHS had carried its burden").  For all these reasons, the undersigned concludes that the February 3, 2026 bond hearing did not meet the standards required by the preliminary injunction issued in this case.

Having determined that the IJ's decision did not comply with the clear and convincing standard mandated by the preliminary injunction, the remaining issue is what remedy should be ordered.  Habeas corpus is an equitable remedy and "[f]ederal courts have a fair amount of flexibility" to tailor the remedy to the constitutional violation.  Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005).  Given the numerous problems with the IJ bond hearing and the dearth of any new evidence presented by ICE to demonstrate that petitioner is a flight risk, the undersigned finds that ordering another bond hearing would be inadequate relief.  Habeas relief must be tailored to fit the constitutional violation.  Therefore, the undersigned recommends ordering respondents to immediately release petitioner under the same conditions that he was subject to on December 5, 2025, subject to redetention only through a pre-deprivation hearing with rigorous procedural safeguards.

**IV.    Remaining Matters**

Also pending before the court is petitioner's motion for a protective order permitting him to redact his personal information from any court filing.  (ECF No. 2.)  By order dated January 27, 2026, the District Judge granted petitioner's motion to proceed pseudonumously and referred the motion for a protective order to the undersigned.  (ECF No. 11 at 7.)   In light of good cause shown for the motion and the lack of any prejudice to respondents at this juncture, the undersigned recommends granting petitioner's motion for a protective order.

////

8

**V.      Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's motion to enforce the preliminary injunction (ECF No. 13) be granted.

2.  Respondents be ordered to release petitioner immediately under the same conditions that he was subject to on December 5, 2025.

3.  If respondents seek to redetain petitioner, they must provide no less than 7 days notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter at which petitioner's eligibility for bond must be considered.  At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight.

4.  Petitioner's motion for a protective order (ECF No. 2) be granted based on good cause shown.

5.  All parties be ordered to redact any names or information potentially identifying or revealing information that could identify petitioner or his family, or to file any such documents under seal.

6.  Respondents and their counsel be precluded from sharing any information about petitioner's identity or related personal information beyond what is reasonably necessary for the litigation or to comply with the Court's orders.

7.  The use of petitioner's identity or identifying information for any purpose outside of this litigation be prohibited.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties

9

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE